**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION**

| | |
|---|---|
| MIAMI BEACH HOSPITALITY, LLC,D/B/A/ THE DEAUVILLE BEACH RESORT and BELINDA MERUELO, Individually<br><br>Plaintiffs,<br><br>v.<br><br>ELAVON, INC.,<br><br>Defendant. | Civil Action No: 1:17-cv-24478-JEM |

**DEFENDANT ELAVON INC.'S MOTION TO COMPEL ARBITRATION AND
INCORPORATED MEMORANDUM OF LAW**

Defendant Elavon, Inc., ("*Elavon*") submits its Motion to Compel Arbitration and Incorporated Memorandum in Support, and respectfully shows the Court as follows:

**I.   INTRODUCTION**

On October 3, 2017, and pursuant to the Terms of Service entered into by the parties, Elavon filed a demand for arbitration against Plaintiffs Miami Beach Hospitality, LLC d/b/a the Deauville Beach Resort ("*MBH*") and Belinda Meruelo (collectively "*Plaintiffs*"). Specifically, Elavon sought to recover $227,176.59 in fees assessed by MasterCard for a fraud recovery loss caused as a result of Plaintiffs' data security deficiencies.

Despite an agreement to arbitrate "any and all claims" arising between Elavon and Plaintiffs and Elavon's arbitration demand, Plaintiffs refused to abide by their agreement to arbitrate and filed a Complaint before the Circuit Court Of The Eleventh Judicial Circuit for Miami-Dade County, Florida for declaratory relief, seeking to avoid the payment of fees by

1

claiming the Terms of Service entered into between the parties, and the indemnification provision therein, was not incorporated into the Merchant Application.

Plaintiffs' actions are in direct contradiction to their contractual obligations to arbitrate any disputes between the parties. Elavon's motion to compel arbitration should be granted and the instant proceeding should be stayed pending the outcome of the arbitration.

## II. FACTUAL BACKGROUND

### A. The Merchant Application and Agreement to Arbitrate.

Elavon is a Georgia corporation that provides payment processing services to merchants who wish to accept credit and debit card payments. Plaintiffs are merchants who operate the Deauville Beach Resort in Miami Beach. Ms. Meruelo, as owner of MBH, entered into a merchant agreement with Elavon (the "***Merchant Application***") for Elavon's provision of payment processing services. The Merchant Application provides that by signing the application the merchant accepts and agrees to Elavon's Terms of Service ("***TOS***"). The application then directs the applicant to a specific web address containing a PDF of the TOS. The payment processing relationship between Elavon and Plaintiffs is governed by Elavon's TOS.

Pursuant to the TOS, any and all claims or controversies between the parties arising out of or related to the relationship are to be submitted to a single arbitrator for a hearing to be held in Atlanta, Georgia. Specifically, the TOS provides:

> All claims or controversies, or other matters in question, between the parties arising out of or related to the Agreement or the relationship between the parties that are not otherwise settled by agreement of parties will be submitted to and decided by arbitration held in Atlanta, Georgia in accordance with the rules of the American Arbitration Association as modified by the Agreement.

*See* §(A)(18)(g) [ECF 1, Ex. A at 42-43] (the "***Arbitration Agreement***").

The TOS further provides:

> any challenge to the enforceability of the agreement to arbitrate contained in

2

>Section (A)(18)(g) of the Agreement, on any ground, shall be brought in either the Superior Court of Fulton County, Georgia or in the United States District Court for the Northern District of Georgia, and in no other court, and each of the parties to the Agreement consents to the exercise of personal jurisdiction by these courts and waives all objections based on a lack of personal jurisdiction, venue or the inconvenience of the forum.

*See* §(A)(18)(b) [ECF 1, Ex. A at 42].

### B. **Plaintiffs' Failure to Comply with the Payment Card Industry Data Security Standards**.

Pursuant to the TOS, Plaintiffs were also required to comply with the requirements of the Payment Card Industry ("***PCI***") Data Security Standard including, without limitation, the data protection program of MasterCard. Plaintiffs further agreed they would be solely responsible for and would indemnify Elavon for all costs, including fees, fines, penalties, or assessments by a Payment Network, such as MasterCard, related to any data security incident.

Plaintiffs, however, failed to abide by the required PCI data security standards. As a result of deficiencies in Plaintiffs' data security program and their failure to remediate such vulnerabilities between 2011 and 2015, MasterCard assessed a fraud recovery loss against Elavon in the amount of $227,176.59. MasterCard debited this amount from Elavon's account on March 19, 2017.

Under the express terms of the TOS, Elavon requested Plaintiffs indemnify Elavon for the full amount withheld by MasterCard. Despite their express obligations under the TOS, Plaintiffs refused to remit the amounts due to Elavon pursuant to their indemnification obligation.

### C. **Resulting Lawsuit and Arbitration.**

As a result of Plaintiff's refusal, on October 3, 2017, and pursuant to the terms of the TOS, Elavon filed a demand for arbitration before the American Arbitration Association ("***AAA***"), seeking to recover the entire amount due in addition to the attorneys' fees contractually

provided for in the TOS, as well as the costs and expenses incurred in the arbitration.

Despite the express terms of the TOS and their agreement to arbitrate any claims arising under the TOS, Plaintiffs responded by filing a Complaint for Declaratory Relief in the Circuit Court Of The Eleventh Judicial Circuit for Miami-Dade County, Florida on October 19, 2017. Plaintiffs also filed a Motion for Stay Pending Review before the AAA on October 25, 2017. On November 6, 2017, Elavon submitted its Response in Opposition to the Motion to Stay to the AAA. On November 9, 2017, after reviewing the parties' submissions, the AAA determined that Elavon had met the filing requirements provided for by the AAA, and that in the absence of an order staying the matter, the AAA would proceed with the administration of the arbitration.

### III.     ARGUMENT AND CITATION TO AUTHORITY

Section 4 of the FAA allows courts to enforce arbitration agreements through "an affirmative order to engage in arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 22 (1983), superseded by statute on other grounds; *see also* 9 U.S.C. § 4. Agreements to arbitrate are generally favored by Florida Courts. *See Brasington v. EMC Corp.*, 855 So.2d 1212, 1215 (Fla. 1st DCA 2003); *see also Mercury Telco Group, Inc. v. Empresa De Telecommunicaciones De Bogota S.A. E.S.P.,* 670 F. Supp. 2d 1350, 1353 (S.D. Fla. 2009) (holding "arbitration agreements must be rigorously enforced by the courts") (internal citations omitted). Georgia courts have similarly held "arbitration clauses are to be generously construed in favor of arbitration." *See Honig v. Comcast of Georgia I, LLC*, 537 F. Supp. 2d 1277, 1282 (N.D. Ga. 2008).[1]

Before a court may require parties to arbitrate, however, the movant must establish that

---

[1] Although Elavon maintains Georgia law should apply, here, regardless, Florida law and Georgia law arrive at the same conclusion. Plaintiffs' should be compelled to arbitrate their claims.

4

there is a valid arbitration agreement and that the disputed claims are subject to arbitration." *Zenith Quest International, LLC v. Topali Ship Mgmt., Inc.*, No. 12-23233-CIV-KING, 2012 WL 12867955 at *1 (S.D. Fla. Nov. 6, 2012). Given the strong policy under both federal law and Florida law favoring arbitration, " [a]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration … [a]ccordingly, courts should rigorously enforce arbitration agreements." *See Herrera Cedeno v. Morgan Stanley Smith Barney, LLC*, 154 F.Supp.3d 1318, 1324 (S.D. Fla. 2016); *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 23. Importantly, the party opposing enforcement of the arbitration agreement bears the heavy burden of proving that the claims asserted are not subject to arbitration. *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 91-92 (2000).

**A.   The Arbitration Agreement Delegates The Issue of Arbitrability to the AAA.**

As an initial matter, Elavon notes the Arbitration Agreement delegates this dispute to the AAA, or alternatively, to a Georgia Court. Accordingly, any determination regarding whether the arbitration agreement is a valid and enforceable agreement should be made by the AAA, or at the very least by the Superior Court of Fulton County, Georgia or the United States District Court for the Northern District of Georgia, as set forth in the TOS.

Generally, "[i]t is for the court, not the arbitrator, to determine whether a valid arbitration agreement exists." *Anderson v. Taylor Morrison of Florida, Inc.*, 223 So.3d 1088, 1091 (Fla. 2d DCA 2017), *reh'g denied* (July 14, 2017). Parties are, however, "free to structure their arbitration agreements as they see fit." *Rimel v. Uber Techs., Inc.*, 246 F. Supp. 3d 1317, 1323 (M.D. Fla. 2017) (quoting *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 479 (1989)). Parties can therefore decide to delegate "threshold determinations to an arbitrator, such as whether an arbitration agreement is enforceable." *Parnell v. CashCall, Inc.*,

5

804 F.3d 1142, 1146 (11th Cir. 2015). Thus, arbitrators may decide issues of arbitrability including the existence of a valid agreement to arbitrate if there is "clear and unmistakable" evidence that the parties agreed to delegate the issue to the arbitrators. *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 994 (1995).

        1. <u>The Arbitration Agreement delegates questions regardin arbitrability to the AAA.</u>

Furthermore, where an agreement incorporates by reference arbitration rules that contain delegation provisions, those rules satisfy the clear and unmistakable evidence requirement. *See Terminix Int'l Co., LP v. Palmer Ranch Ltd. P'ship*, 432 F.3d 1327, 1332 (11th Cir. 2005) (citing similar precedents from the First and Second Circuit Courts of Appeal, as well as several state and federal district courts). In *Terminix*, the Court determined where the validity of the arbitration agreement was being challenged, that the parties agreed to delegate any such challenge to the AAA, by providing in each of their arbitration clauses that "arbitration shall be conducted in accordance with the Commercial Arbitration Rules then in force…." *Id.* Accordingly, the Court held the arbitration agreement incorporating the Commercial Arbitration Rules of the AAA clearly and unmistakably delegated questions regarding an arbitration clause's validity, because AAA Rule 8(a) provided that "the arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement." *Id.*

Similarly, here, the TOS delegates issues regarding the scope and validity of the Arbitration Agreement to the AAA. Specifically, the Arbitration Agreement plainly incorporated the AAA rules by reference and reads that any arbitration shall occur "in accordance with the

rules of the American Arbitration Association." *See* TOS §A(18)(g) [ECF 1, Ex. A at 42-43].[2] Further, Rule 7(a) of the AAA's Commercial Arbitration Rules and Mediation Procedures precisely mirrors the language cited in *Terminix* as a valid delegation. Specifically, Rule 7(a) provides "The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim." Accordingly, under the Federal Arbitration Act, 9 U.S.C. § 2, the AAA is the proper forum to resolve the parties' disputes regarding the validity of the Arbitration Agreement.

### 2. The TOS provide that any dispute regarding enforceability should be decided by a Georgia court.

Alternatively, and even if the Eleventh Circuit had not already decided that disputes such as this must be delegated to an arbitrator, this Court should dismiss this case and require Plaintiffs to bring their claims before a Georgia Court.

The TOS clearly provides:

> Any challenge to the enforceability of the agreement to arbitrate contained in Section (A)(18)(g) of the Agreement, on any ground, shall be brought in either the Superior Court of Fulton County, Georgia or in the United States District Court for the Northern District of Georgia, and in no other court…."

*See* TOS § (A)(18)(b) [ECF 1, Ex. A at 42]. This forum selection clause is "presumptively valid." *Reyes v. Claria Life & Health Ins. Co.*, 190 So.3d 154, 157 (Fla. 3d DCA 2016) (quoting *Corsec, S.L. v. VMC Int'l Franchising, LLC*, 909 So.2d 945, 947 (Fla. 3d DCA 2005)); *see also Loeffelholz v. Ascension Health, Inc.*, 34 F.Supp.3d 1187, 1189 (M.D. Fla. 2014) ("Forum selection clauses are presumptively valid"); *Krenkel v. Kerzner Intern. Hotels Ltd.*, 579 F.3d 1279, 1281 (11th Cir. 2009) (same). To avoid enforcement of such a clause, Plaintiffs must

---

[2] Rule 1 of the AAA's Commercial Arbitration Rules specifies "The Parties shall be deemed to have made these rules a part of their arbitration agreement whenever they have provided for arbitration by the American Arbitration Association…"

show the forum selection clause "is unjust or unreasonable, though the test of unreasonableness is not mere inconvenience or additional expense." *Reyes,* 190 So. 3d at 157; *see also Loeffelholz*, 34 F. Supp. 3d at 1189 (holding "[a] forum-selection clause will be invalidated when: (1) its formation was induced by fraud or overreaching; (2) the plaintiff would be deprived of its day in court because of inconvenience or unfairness; (3) the chosen law would deprive the plaintiff of a remedy; or (4) enforcement of the clause would contravene public policy."). Plaintiffs have not, and cannot, make such a showing.

The TOS unmistakably delegates issues regarding disputes over the validity of the arbitration agreement to a Georgia Court. *See* TOS § (A)(18)(b) [ECF 1, Ex. A at 42]. Plaintiffs have failed to argue otherwise, instead arbitrarily filing this action in a Florida state court. Nor have Plaintiffs sought to avoid enforcement by arguing the forum selection clause is unjust or unreasonable, failing to even allege any such argument in their Complaint. Nor have Plaintiffs argued the Arbitration Agreement would deprive them of any remedy available or contravene any public policy.

Accordingly, as an initial matter, this Court should dismiss this action and require Plaintiffs to seek relief regarding the enforceability of the Arbitration Agreement in the pending arbitration or, at the very least, before the Superior Court of Fulton County, Georgia or the United States District Court for the Northern District of Georgia as required by the TOS.

**B.     The Parties Entered Into a Valid Arbitration Agreement Governed By the FAA Which Requires Arbitration of Plaintiffs' Claims.**

Whether a Georgia or Florida Court decides the issue, and whether the Federal Arbitration Act ("*FAA*"), Georgia, or Florida law applies, the parties entered into a valid Arbitration Agreement which must be enforced. Plaintiffs should be compelled to submit their claims to arbitration.

The FAA provides that private agreements to submit disputes to arbitration "shall be valid, enforceable, and irrevocable save upon such grounds as exist at law or in equity for the revocation of any contract." *See* 9 U.S.C. § 2. Florida Courts have acknowledged "Section 2 prohibits the states from placing greater restrictions on arbitration clauses than those that apply to other contract provisions … [and] [a] court must enforce an arbitration agreement according to its terms, absent an established ground for setting aside the contractual provision, such as fraud, duress, coercion, or unconscionability." *Basulto v. Hialeah Auto.*, 141 So.3d 1145, 1153 (Fla. 2014); *see also Julian v. Rollins, Inc.,* 2017 WL 495866, at *1 (M.D. Fla. 2017) (same).

In addressing challenges to the formation of an arbitration agreement, "courts apply the contract law of the particular state that governs the formation of contracts." *Herman v. Seaworld Parks & Entm't, Inc.*, No. 8:14-CV-3028-T-35JSS, 2016 WL 7447555, at *2 (M.D. Fla. Aug. 26, 2016) (quoting *Caley v. Gulfstream Aerospace Corp.*, 428 F.3d 1359, 1368 (11th Cir. 2005)). To establish a contact has been former, Florida law requires: an offer; an acceptance; consideration; and sufficient specification of the essential terms. *Pineda v. PRC, LLC*, No. 1:11-CV-20894-JLK, 2011 WL 3022564 at *4 (S.D. Fla. July 22, 2011).[3] Further, a mutual agreement to arbitrate claims is sufficient consideration to support an arbitration agreement. *Fraser v. Perkins & Marie Callender's LLC,* No. 8:16-cv-3226-T-23AEP, 2016 WL 7492464 at *1 (M.D. Fla. Dec. 30, 2016) quoting *Kinko's, Inc. v. Payne,* 901 So. 2d 354, 355 (Fla. 2d DCA 2005) (noting that "the agreement of a party to submit to arbitration is sufficient consideration in support of the other party's agreement to do the same.").

Here, Plaintiffs voluntarily signed the Merchant Application, incorporating the TOS

---

[3] Similarly, under Georgia law there must be an offer, acceptance, and adequate consideration. *See Caley v. Gulfstream Aerospace Corp.*, 428 F.3d 1359, 1373-77 (11th Cir. 2005); *Anderson v. AIG Life & Ret.*, 199 F. Supp. 3d 1371, 1378 (S.D. Ga. 2016); *see also Atlanta Six Flags P'ship v. Hughes*, 381 S.E.2d 605, 607 (Ga. Ct. App. 1989).

containing the Arbitration Agreement. Plaintiffs thus entered into a valid Arbitration Agreement and should be required to arbitrate their claims as agreed to by the Parties. Further, the Arbitration Agreement is an enforceable contract under both Georgia and Florida contract law principles. It sets forth the specific terms of the offer by Elavon to arbitrate specific claims; acceptance of the offer as evidenced by Plaintiffs' signature on the Merchant Application and submission of transaction receipts, and the mutuality of promises and obligations of the parties to arbitrate any disputes between them serves as sufficient consideration. *See Caley v. Gulfstream Aerospace Corp.*, 428 F.3d 1359, 1373-77 (11th Cir. 2005); *Anderson v. AIG Life & Ret.*, 199 F. Supp. 3d 1371, 1378 (S.D. Ga. 2016) (noting "[u]nder Georgia law, a mutual exchange of promises constitutes adequate consideration"); *see also Atlanta Six Flags P'ship v. Hughes*, 381 S.E.2d 605, 607 (Ga. Ct. App. 1989); *see Jericho All-Weather Opportunity Fund, LP v. Pier Seventeen Marina & Yacht Club, LLC*, 207 So.3d 938, 941 (Fla. 4th DCA 2016) ("[t]he basic elements of an enforceable contract are offer, acceptance, consideration, and sufficient specification of essential terms.").

In addition, and despite Plaintiffs contention that the Merchant Application "gives no hint to Plaintiffs that it [sic] will be liable for monies," Plaintiffs were clearly directed to the TOS in the Merchant Application, and provided with a web address to access the TOS. The TOS expressly provided for the indemnification obligation at issue here. Plaintiffs willingly signed the Merchant Application, accepted Elavon's payment processing services and transmitted transaction receipts to Elavon. Plaintiffs' should be held to their contractual obligations and be compelled to arbitrate their claims.

### C. Plaintiffs' Claim and Elavon's Claims are Within the Scope of the Arbitration Agreement.

Both Plaintiff's claims in the Complaint and Elavon's claims in the arbitration are within the scope of the Arbitration Agreement.

As noted above, "[t]he FAA creates a presumption in favor of arbitrability; so, parties must *clearly express* their intent to exclude categories of claims from their arbitration agreement." *Lambert v. Austin Ind.*, 544 F.3d 1192, 1197 (11th Cir. 2008) (emphasis added). A party cannot be allowed to avoid arbitration solely "because the arbitration clause uses general, inclusive language, rather than listing every possible specific claim." *Id.* Therefore, an agreement to arbitrate will not be deemed vague simply "because it includes the universe of the parties' potential claims against each other." *Id.* (quoting *Brown v. ITT Consumer Financial Corp.,* 211 F.3d 1217, 1221 (11th Cir. 2000)).

Here, the Arbitration Agreement includes a broad delegation to arbitration: "[a]ll claims or controversies, or other matters in question, between the parties arising out of or related to the Agreement or the relationship between the parties." *See* §(A)(18)(g) [ECF 1, Ex. A at 42-43]. Where an arbitration clause provides for the arbitration of "[a]ll disputes, controversies or differences which may arise between [the parties] out of or in relation to [the specified provisions] or for the breach thereof," the plaintiff is required to arbitrate any claim that "touch[es] matters covered by the enumerated articles." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 647 n.13 (alterations in original); *see also Lamber*, 544 F.3d at 1197 (requiring an express intent to exclude categories of claims from a broad delegation clause).

Plaintiffs seek a declaration from this Court that the Merchant Application did not incorporate the TOS and the Arbitration Agreement contained therein. In so doing, Plaintiffs'

11

dispute the enforceability of the TOS, a dispute clearly related to the TOS which must be submitted to arbitration.  Plainly, the crux of Plaintiffs' Complaint and its factual allegations "touch matters," and are therefore "related to," the TOS, and the Arbitration Agreement. *Mitsubishi*, 473 U.S. at 647 n.13. Accordingly, Plaintiff's claim is well within the scope of the Arbitration Agreement.

Further, the claims brought by Elavon in the prior pending arbitration arise directly out of the relationship between the parties. Elavon provided payment processing services to Plaintiffs. Plaintiffs agreed to comply with certain data security standards, promulgated to protect consumers' private data, in order to receive such services. Plaintiffs failed to comply with those standards, exposing consumer data to theft and fraud and causing Elavon to suffer $227,176.59 in damages.  Plainly, Elavon's arbitration demand and the factual allegations therein, center on the TOS and are covered by the Arbitration Agreement.  Even if there were any doubts about whether the Complaint and its factual allegations "touch matters" and are therefore "related to" the TOS, it "should be resolved in favor of arbitration." *United Steelworkers of Am. v. Warrior & Gulf Nay. Co*., 363 U.S. 574, 582-83 (1960) ("[A]n order to arbitrate [a] particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute").  Here, there is no such doubt.

**D.**     **The TOS are incorporated into the Merchant Application.**

Finally, to the extent Plaintiffs seek to argue the Merchant Application's express reference to the TOS does not constitute their agreement to the Arbitration Agreement or the application of Georgia law – Plaintiffs' argument is without merit. The TOS were effectively incorporated by reference and Plaintiffs' have failed to establish otherwise.

The incorporation of extrinsic documents by reference is generally effective "where the provision to which reference is made has a reasonably clear and ascertainable meaning." *Wilson v. Clark Atlanta Univ., Inc.*, 794 S.E.2d 422, 432 (Ga. App. Ct. 2016) (quoting *Town Center Assoc. v. Workman*, 487 S.E.2d 624 (Ga. App. Ct. 1997)). Though Elavon maintains Georgia law is applicable per the TOS, even Florida law does not permit Plaintiffs to escape the TOS, or the arbitration provision contained therein. To incorporate a document by reference in Florida, the incorporating document must provide that it is subject to the collateral document which must be "sufficiently described or referred to in the incorporating agreement" so that the intent of the parties can be ascertained. *BGT Group, Inc. v. Tradewinds Engine Services, LLC*, 62 So.3d 1192 (Fla. 4th DCA 2011); *see also Global Quest, LLC v. Horizon Yachts, Inc.*, 849 F.3d 1022, 1033 (11th Cir. 2017) (holding under Florida law a document "is deemed to be incorporated by reference into a contract if the contract (1) specifically provides that it is subject to the incorporated collateral document and (2) the collateral document to be incorporated must be sufficiently described or referred to in the incorporating agreement so that the intent of the parties may be ascertained."); *see also Hirsch v. Jupiter Golf Club LLC*, 232 F. Supp. 3d 1243, 1253 (S.D. Fla. 2017) ("It is a generally accepted rule of contract law that, where a writing expressly refers to and sufficiently describes another document, that other document, or so much of it as is referred to, is to be interpreted as part of the writing.") "The requirement that the contract language be explicit or otherwise clear and precise for incorporation does not amount to a rule that the parties must use a rote phrase or some other magic words in order to effect an incorporation by reference. Rather, it is sufficient if the general language of the incorporation clause reveals an intent to be bound by the terms of the collateral document." *PartyLite Gifts,*

*Inc. v. MacMillan*, 895 F. Supp. 2d 1213, 1231 (M.D. Fla. 2012).[4]

> Here, the Merchant Application states:
>
> The signature by an authorized representative of Merchant on the Merchant Application, or the transmission of a Transaction Receipt or other evidence of a Transaction to us, shall be the Merchant's acceptance of and agreement to the terms and conditions contained in the Agreement including, without limitation, this Merchant Application, ***the Terms of Service ("TOS")*** and the Merchant Operating Guide ("MOG") incorporated herein by this reference and located at our website at https://www.merchantconnect.com/CWRWeb/pdf/TOS_ENG.pdf and https://www.merchantconnect.com/CWRWeb/pdf/MOG_Eng.pdf, respectively. If Merchant does not have access to view the TOS or MOG at our website please contact our customer service center.

*See* TOS §A(18)(g) [ECF 1, Ex. A at 42-43]. The Merchant Application thus provides that by signing the application the merchant accepts and agrees to the TOS incorporated by reference. The Merchant Application then specifically directs the merchant to the URL address where the TOS can be found and reviewed and further provides that should the merchant not be able to access the TOS on Elavon's website to contact the customer service center and so that a copy of the TOS can be provided to the merchant.

The TOS have a clear and ascertainable meaning, and the URL provided in the Merchant Application unambiguously directs Plaintiffs to the TOS. *See Avatar Properties, Inc. v. Greetham*, 27 So.3d 764, 766–67 (Fla. 2d DCA 2010) (incorporating a warranty by reference and holding that where a provision advised the plaintiff that they could review the warranty at issue

---

[4] Though a reference to a general web address, without more, is not enough to sufficiently describe a document, *see Affinity Internet, Inc. v. Consolidated Credit Counseling Servs., Inc.*, 920 So.2d 1286 (Fla. 4th DCA 2006), the URL in the Merchant Application directs users to a specific PDF document. There is no ambiguity as to which documents are being incorporated. The Merchant Application also states plainly that acceptance of the Merchant Application also includes acceptance of the Terms of Service, making the Merchant Application expressly subject to the latter. *See also Aerosonic Corp. v. Liberty Mut. Fire Ins. Co.*, No. 8:09-CV-1355-T-26EAJ, 2009 WL 5068616, at *6 (M.D. Fla. Dec. 17, 2009) (distinguishing *Affinity* by noting there the use of the phrase "subject to" did not adequately incorporate by reference the arbitration provision attached to the user agreement.). Further, the Merchant Application asks that the merchant reach out to Elavon's customer service center if for any reason the merchant cannot access the link provided.

at the defendant's offices or choose to have the warranty attached to the primary agreement"[a]ny failure on their part to avail themselves of either opportunity is not a basis to find that no agreement existed"). Plaintiffs own failure to access the website and review the TOS does not excuse them from their obligations under the TOS. *See Allied Van Lines, Inc. v. Bratton,* 351 So.2d 344, 347 (Fla. 1977) ("No party to a written contract in this state can defend against its enforcement on the sole ground that he signed it without reading it."); *see Monteverde v. West Palm Beach Food & Beverage, LLC*, 2016 WL 1161224, at *4 (S.D. Fla. 2016) (holding "[u]nder Florida law, the signatory to a contract has a strong duty to read the contents of the agreement before he or she signs"); *see Buffalo Trump Tower One, LLC v. TRG Sunny Isles V, Ltd.,* 2009 WL 10667160, at *3 (S.D. Fla. 2009) ("It is well established that a party's mere failure to read a contract and thus to know and understand its terms is not grounds for rescission or revocation.").

Accordingly, Plaintiffs are bound by the terms of the TOS and the Arbitration Agreement therein.

### IV.   CONCLUSION

For the forgoing reasons, Elavon respectfully requests an order compelling Plaintiffs to arbitrate their claims against Elavon and staying the matter pending the completion of arbitration proceedings.

Dated this 24th day of January, 2018.

Respectfully submitted,

*/s/ Giovanni Angles*

**BRYAN CAVE LLP**
Giovanni Angles, Esq.
Florida Bar No. 109383
giovanni.angles@bryancave.com

        200 South Biscayne Boulevard
        Suite 400
        Miami, Florida 33131
        Telephone: 786-322-7500

        Christopher P. Galanek (*pro hac* forthcoming)
        Georgia Bar No. 282390
        Christopher.Galanek@bryancave.com
        Aiten M. McPherson (*pro hac* forthcoming)
        Georgia Bar No. 439899
        Aiten.McPherson@bryancave.com

        One Atlantic Center, Fourteenth Floor
        1201 West Peachtree Street, N.W.
        Atlanta, Georgia 30309
        Telephone: 404-572-6600

        *Attorneys for Defendant Elavon Inc.,*

## CERTIFICATE OF SERVICE

    I HEREBY CERTIFY that a true copy of the Defendant Elavon Inc.'s Response To Plaintiffs' Motion For Arbitration has been electronically filed with the Florida ECF portal and sent to all counsel of record this 24th day of January, 2018.

        /s/ *Giovanni Angles*